[No. B006161. Second Dist., Div. Three. July 31, 1985.]

COALITION AGAINST POLICE ABUSE, et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CITY OF LOS ANGELES, Real Party in Interest.

**COUNSEL**

Joseph Lawrence, Paul L. Hoffman, Fred Okrand, Robert C. Lind, Jr., Mark D. Rosenbaum, Joan W. Howarth and Sharon Barton for Petitioners.

No appearance for Respondent.

Ira Reiner and James K. Hahn, City Attorneys, Frederick N. Merkin, Senior Assistant City Attorney, Lewis N. Unger and Pamela Victorine, Deputy City Attorneys, for Real Party in Interest.

## OPINION

**DANIELSON, J.**—Petitioners are plaintiffs in six actions consolidated under the caption *Coalition Against Police Abuse, etc., et al.* v. *Board of Police Commissioners of the City of Los Angeles, etc., et al.,* brought by a number of individuals and organizations against The City of Los Angeles (hereafter City) and a number of other individuals and entities. Pursuant to a settlement agreement between the parties dismissals with prejudice were entered as to all defendants except the City, which is the only remaining party defendant and is the real party in interest in these proceedings.

### THE ISSUE PRESENTED

The issue presented in these proceedings is whether a trial court has jurisdiction to order the return of documents ordered produced in civil discovery, subject to protective orders including an order that the court retains jurisdiction as to the ultimate disposition of such documents, where the action in which the documents were produced is settled before trial.

Stated otherwise:

Whether documents produced in civil discovery, subject to protective orders including an order that the court retains jurisdiction as to the ultimate disposition of such documents, may be retained by the party which received them, for use in matters other than the action in which they were produced, where that action is settled before trial.

The issue is close to that decided by the Supreme Court in *Seattle Times Co.* v. *Rhinehart* (1984) — U.S. —, — [81 L.Ed.2d 17, 26, 104 S.Ct. 2199], where the court stated: "The critical question that this case presents is whether a litigant's freedom comprehends the right to disseminate information that he has obtained pursuant to a court order that both granted him access to that information and placed restraints on the way in which the information might be used."

### STATEMENT OF THE CASE

Petitioners seek a writ of mandate or prohibition commanding the respondent Superior Court for Los Angeles County to vacate its order re return of

documents produced by defendants, made May 10, 1984, after judgment entered February 22, 1984, and to enter a new order denying City's motion for an order requiring the immediate return to defendants of all materials produced to plaintiffs subject to protective orders, until such time as City demonstrates with particularity that the return of documents is necessary to satisfy a compelling governmental interest, unrelated to the suppression of speech, that cannot be accommodated by a less restrictive alternative.

We grant the petition.

The underlying actions challenged the Los Angeles Police Department's (hereafter LAPD) use of undercover officers and agents to surveil and report on assertedly lawful political activity.

The first action was filed in June 1978. The six actions were consolidated in October 1982. Intense discovery activities and trial preparation were carried out throughout the litigation until the settlement agreement was reached and a consent judgment was entered in February 1984.

In the course of these proceedings, petitioners obtained hundreds of thousands of documents from defendants through extensive discovery, a large number of which were produced subject to protective orders which imposed close restraints on the copying and use of the documents and which permitted limited dissemination of certain of the discovered materials.

The actions culminated in the February 22, 1984, entry of a stipulated consent decree and judgment (judgment), which recited that the parties had consented to the entry of the judgment "without any admission of liability and without trial or adjudication of any issue of fact or law." The judgment recognized the rights of individuals and groups "to maintain their privacy, to receive, hold and express ideas, to dissent freely, to write and to publish, to petition the government for the redress of grievances, and to associate publicly and privately for any lawful purpose," and that such conduct is "not the proper subject of a law enforcement investigation." The judgment also recognized "a legitimate law enforcement function in investigating and preventing the commission of crimes . . ." and that "[u]ndercover investigations and intelligence gathering by law enforcement agencies are necessary in some circumstances. . . ."

The judgment sought to achieve a balance accommodating "both the legitimate law enforcement needs of the City . . . and the constitutional rights of the individuals and organizations affected by law enforcement efforts" by formulating a set of standards for proper utilization of the police inves-

tigative function, periodic review thereof by the Police Commission, and citizen access to "relevant, non-confidential and non-privileged information pertaining to themselves and investigations . . . by the Los Angeles Police Department." The court retained jurisdiction of the subject matter of the judgment until July 1, 1991.

The judgment was entered pursuant to a Settlement Agreement between the parties providing, inter alia, that the making of the agreement "is not, nor shall it be deemed, an admission of any liability or wrongdoing whatsoever on the part of the Defendants. . . . [¶] The City maintains that the Defendants (especially the police officers) acted properly in all respects . . . and . . . that the conduct of the Defendants . . . was proper and necessary . . .," and for the City's payment of $900,000 in settlement of the petitioners' claims for damages, and $900,000 in attorney fees.

In the agreement, plaintiffs (petitioners here) agreed to file a request for dismissal with prejudice of all of the actions as to all defendants except the City, and fully released all defendants, including Doe defendants, from any and all causes of action, claims and liabilities occurring prior to the date of the agreement. Petitioners "reserve[d] the right to petition their elected representatives and the members of the Board of Police Commissioners to seek additional restrictions on the LAPD's intelligence gathering operations."

Neither the settlement agreement nor the judgment made any provision for disposition of discovered materials in petitioners' possession. Petitioners claim they voluntarily returned certain documents requested by the City.

On March 23, 1984, following entry of the judgment, the City moved for the immediate return of all materials produced to petitioners subject to protective orders. Petitioners opposed the motion, and a hearing was held on April 9, 1984.

At the hearing, the court stated that the documents subject to the protective orders were produced specifically for the litigation which was in progress and which was being prepared for trial and that "this lawsuit is over with the decree except for the supervisorial aspects of the decree, and the papers were produced under very finite special circumstances, and there is no reason for them being retained."

At the conclusion of the hearing the court stated: "The record is very, very clear that every disputed discovery motion had built into it a balancing of various interests: The interests of the plaintiffs for discovery of relevant

information and information with which they could prepare their trial. And on the other side, the whole litany of privileges, government privileges, privacy privileges, and in each case in which the court ordered production, having gone through that balancing, it determined that the interests of the plaintiffs were superior . . . . What is now lacking is that tremendous, overwhelming need for litigation preparation that the plaintiffs had before is now lacking and therefore the balance tilts back in favor of the various privileges that had been asserted."

Plaintiffs then filed a motion to reconsider the court's tentative order of April 9, 1984. A hearing was held on that motion on May 10, 1984, during which petitioners' counsel suggested that the court wait in making its decision on the return order until the United States Supreme Court had decided *Seattle Times Co.* v. *Rhinehart,* which might decide whether the First Amendment applies to documents produced under civil discovery. After extensive argument the court announced that it would not defer action and that it was going to grant the return order.

In its order re return of documents produced by defendants, dated May 10, 1984, the court required that within 60 days all of the documents described in that order, which had been produced by defendants to plaintiffs subject to protective orders, be returned to defendants, together with all copies of those documents; that within 30 working days thereafter the City inventory the documents, following which the documents be jointly sealed by the parties with the City retaining custody of them until July 1, 1991, or until further order of the court. Plaintiffs' counsel were to be given a copy of the inventory on its completion. Access to the sealed documents may be had solely through order of the court during the period of court-ordered custody. The court also retained jurisdiction to approve the storage and retention procedures and ordered that defendants lodge with the court and serve on plaintiffs' counsel a proposal for specific retention arrangements, and identify an officer of City to be responsible therefor, all for the court's approval.

Thereafter, on June 26, 1984, the court entertained another motion by petitioners for reconsideration, in the light of the decision of the United States Supreme Court in *Seattle Times Co.* v. *Rhinehart* (1984) 467 U.S. 20 [81 L.Ed.2d 17, 104 S.Ct. 2199]. After hearing the arguments of counsel the court stated that it had reconsidered its previous ruling in the light of *Seattle Times* and, having reconsidered the matter, ordered that the previous order stand, stating, "[t]he court is of the conclusion that *Seattle Times* does not support a contrary decision and, in fact, is, at least inferentially, supportive of the court's previous order."

On July 9, 1984, petitioners filed their petition for a writ of mandamus or prohibition, and request for immediate stay,[1] to command the superior court to vacate its return order of May 10, 1984. We denied that petition on July 10, 1984. Petitioners then sought hearing in our Supreme Court, which granted the hearing on August 23, 1984, and retransferred the matter to this court with instructions to issue an alternative writ, which we did on October 2, 1984.

Meanwhile, on July 24, 1984, petitioners filed a notice of appeal from the court's orders of May 10 and June 26, 1984. Thereafter, pursuant to stipulation of the parties, we ordered that the appeal be consolidated with the pending petition for writ of mandate in view of the fact that both proceedings concern the same subject matter and challenge the same order of May 10, 1984.

CONTENTIONS

Petitioners contend that:

1. Under established First Amendment principles petitioners have a right to maintain and disseminate the discovery materials produced in these cases under the protective order.

2. Under the California Constitution the return order is impermissible.

3. The return order violates petitioners' right to petition.

4. Petitioners are entitled to the produced materials under the California Public Records Act and the City's Freedom of Information Ordinance.

5. The return order violates petitioners' rights to recover compensation for their property.

6. The superior court's order is premature.

The City controverts petitioners' contentions and in turn contends that the trial court acted within its discretion when it ordered the discovered documents to be returned under seal and that a writ of mandate is not available absent a clear showing of an abuse of discretion.

---

[1] The petition for immediate stay is moot inasmuch as the parties have agreed that until after this matter is decided the petitioners may keep possession of the documents and that there will be no public disclosure of any information contained in them.

Discussion

*The Protective Orders*

It is not disputed that all of the documents at issue in this proceeding were produced to petitioners pursuant to civil discovery and subject to one or more of several protective orders. The first protective order was issued on November 7, 1979, and was modified on December 18, 1980. The parties have not provided us with or informed us as to the modification of December 18, 1980. The order of November 7, 1979, as modified, remained in effect until superseded by a new stipulated order on June 18, 1981. There were other protective orders, some relating to a specific document or group of documents, which are not specially argued in the parties' briefs, and which contain restraints and limitations substantially equivalent to the orders of November 7, 1979, and June 18, 1981.

The discovery orders do not prohibit the dissemination of information received from sources other than the discovered documents.

We have not been provided with transcripts of the proceedings which resulted in the entry of the protective orders. We must therefore presume that the court's orders were supported by substantial evidence and followed a careful balancing of the competing interests of the parties. A reading of the basic order of November 7, 1979, reflects that it was made following extensive review of the documents and testimony presented *in camera* over a period of five days. (Fn. 2.) We therefore conclude that the orders were entered on a showing of good cause.

Parts of the two mentioned discovery orders which are relevant to this discussion are set forth in the margin.[2]

---

[2]*Protective order of November 7, 1979*

"This Minute Order is made following *in camera* review of documents produced in chambers by defendants on September 19, 20 and 21 and October 30 and 31, 1979. Preceding review, the court established seven categories of documents of which four were ultimately used as follows:

"Category 1: Claim of privilege under Evidence Code § 1040 not sustained; document to be produced for inspection and copying subject to the restrictions set forth hereinbelow.

"Category 2: Claim of privilege under Evidence Code § 1040 is sustained on the ground that the necessity for preserving confidentiality of the information outweighs the necessity for disclosure in the interest of justice, in that disclosure may reveal or tend to reveal ongoing investigations.

"Category 4: Claim of privilege sustained under § 1040 on the ground that the document does not report activity of any plaintiff, and that the limited relevancy of the document is

*The Documents in Question*

The record is uncertain as to how many documents were produced subject to the protective orders. References by the parties in their briefs range from

---

outweighed by potential injury to nonparties in the event of publication.

"Category 7: Not relevant or document not called for in motion to produce.

". . . . . . . . . . . . . . . . . . . .

". . . Based on the testimony presented to it during the *in camera* inspection, the court finds that the above listed documents consist of all of defendants' documents falling in the categories listed in the "Amended Notice of Motion for Order Compelling Production of Documents" filed June 13, 1979. It is further found that there were no documents in a number of the categories listed.

"The court on its own motion makes the following findings and order as to documents ordered to be produced and made available for inspection and copying:

"Many items in said documents set forth the names of persons or organizations who are not parties to this action. Certain of those persons and organizations may justifiably believe that release or publication of their names in connection with the items ordered above to be made available for inspection and copying impinges on their rights of privacy. Accordingly, it is ordered as follows:

"1. Plaintiffs' counsel may make one copy only of any of said copies and shall allow no other copies to be made.

"2. Plaintiffs' counsel, Terry Smerling, shall personally secure and maintain said copies in his possession to the end that said copies are only used for the purposes set forth below and no other purpose.

"3. Copies of documents copied shall be used only for purposes of preparing and prosecuting this lawsuit, and for no other purpose, including the promotion of the political or social goals of plaintiffs or others.

"4. If necessary in the judgment of plaintiffs' counsel for prosecution of this lawsuit, plaintiffs' counsel may show or reveal the contents of the copied records to his clients or to co-counsel, but shall not permit notes to be taken of the documents' contents, nor extracts of the contents or copies of the documents to be made.

"5. Prior to taking copies of the documents ordered to be produced, plaintiffs' counsel shall sign and file an acknowledgment that he has read this protective order and agrees to be bound by it. Likewise, any co-counsel or subsequent counsel for plaintiffs shall, before taking possession of, reviewing, or using said documents, shall sign and file such an acknowledgment and agreement.

"6. Plaintiffs, their agents, and all those acting in concert with them, are enjoined from the use of said documents in any manner not permitted in this order. Any plaintiff or agent of a plaintiff, before viewing copies of disclosed documents, shall sign an acknowledgment that he has read the contents of this order, which acknowledgment shall be forwarded to defendants' counsel.

"7. The court retains jurisdiction to modify this protective order and to make further orders with respect to the custody, control and use of the copies of documents taken by plaintiffs pursuant to this order, including orders as to the ultimate disposition of said copies.

". . . . . . . . . . . . . . . . . . . . . . ."

*Protective order of June 18, 1981*

"Plaintiffs and defendants, . . . hereby enter the following stipulation for an order governing the public disclosure of documents ordered produced by the Minute Order of April 27, 1981 and protecting the privacy interests of non-parties named or described in said documents:

"1. Plaintiffs' counsel, Terry Smerling, shall personally secure and maintain plaintiff's unexpurgated and unabridged copies of the produced documents to the end that said copies are only used in the manner set forth below and in no other manner.

"2. If necessary in the judgment of plaintiffs' counsel for prosecution of this lawsuit,

a low of "tens of thousands" to 300,000. Both parties have used numbers exceeding 200,000. The record is silent as to whether a "document" may contain more than one page.

plaintiffs' counsel may show or reveal the contents of the unexpurgated and unabridged copies of the produced documents to his clients or co-counsel.

"3. Plaintiffs, their counsel and agents of counsel may take notes of the produced documents' contents and make extracts of the contents of said documents provided that such making of notes or extracts shall take place in the office of plaintiffs' counsel and under the supervision of plaintiffs' counsel and that any notes and extracts reflecting names or personal identifiers of non-parties named or described in such documents shall remain in the personal control of plaintiffs' counsel.

"4. Plaintiffs and their counsel may publicly disclose any produced document or the contents thereof provided that:

"(a) Such disclosure is accompanied by a statement substantially as follows: 'The present information being disclosed may be incomplete concerning its subject matter and there may be other documents and information in the possession of the Los Angeles Police Department, which documents and information the Superior Court has found to be of such nature that the interests in confidentiality outweigh any present need for disclosure to the plaintiffs or the public.'

"Such statement may be oral or written if the disclosure is oral but must be in writing verbatim as set forth above if the disclosure is written.

"(b) With the exceptions enumerated in paragraph 5, below, one of the following is done to preserve the privacy interests of each living natural person or organization not party to this action named or described in such documents: [¶] (i) The non-party's name and personal identifiers are deleted or omitted; or [¶] (ii) The non-party consents to such disclosure as set forth in paragraphs 7 and 8, below.

"5. Plaintiffs shall not be required to comply with subparagraph 4(b) of this protective order in publicly disclosing any document reflecting the names or personal identifiers of the following persons or organizations provided that each such person or organization is named or described in such document without being labeled or made to appear as the subject of any Los Angeles Police Department investigation contemporaneous with the events or occurrences reported in the document or as the object of criticism or disapproval of Los Angeles Police Department officers:

"(a) a public figure, whether a natural person or organization and whether one who has voluntarily placed himself/herself/itself in the public eye by engaging in public activities, by assuming a prominent role in institutions or activities having general political, economic, cultural, social or similar public interest or by submitting himself/herself/itself or his/her/its work for public judgment or one who has become the subject of public interest as the result of an incident or event, to the extent of his/her/its actions or statements at a public event or occurrence described or mentioned in said document;

"(b) a person or organization who was not present but was mentioned by other persons present at a meeting, event or other occurrence reported in said document.

"6. Plaintiffs and their counsel may inform non-parties named or described in the produced documents of the existence of such documents reflecting their names and identities and of the content of such documents provided plaintiffs comply with paragraphs 4 and 5, above.

"7. Any living natural person named or identified in a produced document may elect to allow public disclosure of such document or the contents thereof to the extent it concerns that individual provided that each such individual is afforded an opportunity to read and inspect such document except for the names or identifying matter as to other living persons or organizations which cannot be disclosed under either paragraph 4 or 5, above.

"8. Any organization named or identified in a produced document through its present or past officers, staff or governing body members may elect to allow public disclosure of that document or the contents thereof to the extent it concerns that organization provided that

Petitioners contend that they need to retain and intend to use the documents in order, inter alia, to monitor future compliance with the consent decree and settlement, to pursue ongoing investigations of the LAPD, to initiate legislation, to release to news media, to use in other litigation, to participate in continuing public debate on the issue of police spying, to petition the police commission, the state legislature and other government bodies for redress of violations of rights revealed in the documents; to participate in annual hearings on the activities of the LAPD before the City Council, to be used by journalists and writers to write articles on the litigation, and as a library on official wrongdoing for use by plaintiffs in their police practices litigation project.

*A Protective Order Entered on a Showing of Good Cause, Limited to the Context of Pretrial Civil Discovery, Which Does Not Restrict the Dissemination of Information Gained From Other Sources, Does Not Offend the First Amendment*

Petitioners urge that they have a First Amendment right to retain and disseminate the discovery materials which are at issue because of the general principle of openness of court proceedings, a traditional public source of information. In support of their argument petitioners cite *Gannett Co.* v. *DePasquale* (1979) 443 U.S. 368, 383 [61 L.Ed.2d 608, 623, 99 S.Ct. 2898]; and *Richmond Newspapers, Inc.* v. *Virginia* (1980) 448 U.S. 555 [65 L.Ed.2d 973, 100 S.Ct. 2814].

Both of those cases are concerned with the closure of in-court proceedings in criminal cases and the balance between fair trial and free press. Neither pertains to the appropriateness of civil pretrial discovery orders and protective orders, which are the questions presented by the case at bench.

---

each such organization is afforded an opportunity to read and inspect such document except for the names or identifying matter as to living persons or other organizations which cannot be disclosed under either paragraph 4 or 5, above.

"9. Plaintiffs' counsel, Terry Smerling, shall within ten days of this Protective Order sign and file an acknowledgment that he has read this Order and agrees to be bound by it. Likewise any co-counsel or subsequent counsel for plaintiffs shall before taking possession of, reviewing, or using said documents sign and file such an acknowledgment and agreement.

"10. Plaintiffs, their agents, and all those acting in concert with them, are enjoined from use of said documents in any manner not permitted in this order. Any plaintiff or agent of a plaintiff, before viewing copies of produced documents shall sign an acknowledgment that he/she has read this Protective Order, which acknowledgment shall be forwarded to defendants' counsel.

"11. The Court shall retain jurisdiction to modify this Protective Order and to make further orders with respect to the custody, control, and use of copies of the produced documents possessed by plaintiffs pursuant to the Minute Order of April 27, 1981 and this Order, including orders as to the ultimate disposition of said copies."

■ Moreover, this contention of petitioners was addressed directly, and found without merit, by the Supreme Court in *Seattle Times Co.* v. *Rhinehart* (1984) 467 U.S. 20, 33 [81 L.Ed.2d 17, 27], where the court stated: "pretrial depositions and interrogatories are not public components of a civil trial. [Fn. omitted.] Such proceedings were not open to the public at common law, [citation], and, in general, they are conducted in private as a matter of modern practice. [Citations.] Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."

■ Petitioners also assert that they have a right to retain and disseminate the discovery materials because of the First Amendment right to receive information and ideas. The Supreme Court, in *Seattle Times,* also answered this contention, stating: "As in all civil litigation, petitioners gained the information they wish to disseminate only by virtue of the trial court's discovery processes. As the rules authorizing discovery were adopted by the state legislature, the processes thereunder are a matter of legislative grace. A litigant has no First Amendment right of access to information made available only for purposes of trying his suit. *Zemel* v. *Rusk,* 381 US 1, 16-17, 14 L.Ed.2d 179, 85 S.Ct. 1271 (1965) ('The right to speak and publish does not carry with it the unrestrained right to gather information.') Thus, continued court control over the discovered information does not raise the same spectre of government censorship that such control might suggest in other situations. See *In re Halkin,* 598 F.2d, at 206-207 (Wilkey, J. dissenting.) [Fn. omitted.]" (81 L.Ed.2d 26-27.)

Petitioners also cite the statement of the Supreme Court in *Waller* v. *Georgia* (1984) 467 U.S. 39 [81 L.Ed.2d 31, 39, 104 S.Ct. 2210], that "[t]he public in general also has a strong interest in exposing substantial allegations of police misconduct to the salutary effects of public scrutiny . . ." in support of their contention that they have a First Amendment right to retain and disseminate the documents. This argument is without merit.

A similar argument was presented in *Seattle Times Co.* v. *Rhinehart, supra,* 467 U.S. 20 [81 L.Ed.2d 17], to which the court responded, at page 26: "In this case, as petitioners argue, there certainly is a public interest in knowing more about respondents. This interest may well include most—and possibly all—of what has been discovered as a result of the court's order . . . . It does not necessarily follow, however, that a litigant has an unrestrained right to disseminate information that has been obtained through pretrial discovery. For even though the broad sweep of the First Amend-

ment seems to prohibit all restraints on free expression, this Court has observed that 'freedom of speech . . . does not comprehend the right to speak on any subject any time.' *American Communications Assn.* v. *Douds,* 339 U.S. 382, 394-395, [94 L.Ed. 925, 70 S.Ct. 674 (1950).]"

We note that *Waller* v. *Georgia* was a criminal case and involved an order closing a pretrial hearing on the suppression of evidence. The issue presented was far different from that before us in the case at bench.

Petitioners also point out that in *Seattle Times* the court ruled that the principle which permitted the protective order against the dissemination of discovered information was that it furthered an important or substantial governmental interest unrelated to the suppression of speech, and that the limitation on First Amendment freedom was no greater than was necessary to protect the particular governmental interest involved. (*Seattle Times Co.* v. *Rhinehart, supra,* 81 L.Ed.2d at p. 26.) Petitioners' position is correct. ▋ However, the Supreme Court also stated that discovery rules "must be viewed in [their] entirety. Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery . . . it is necessary for the trial court to have the authority to issue protective orders . . . . It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. [Fn. omitted.] This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. [Fn. omitted.] [Discovery rules] do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery. [¶] There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes. [Citations.] As stated by Judge Friendly in *International Products Co.* v. *Koons,* 325 F2d 403, 407-408 (CA2 1963), '[w]hether or not the Rule itself authorizes [a particular protective order] . . . we have no question as to the court's jurisdiction to do this under the inherent "equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices." ' . . . The prevention of the abuse that can attend the coerced production of information under a state's discovery rule is sufficient justification for the authorization of protective orders. [Fn. omitted.]" (*Id.,* at pp. 28-29.)

Petitioners rely heavily on *Krause* v. *Rhodes* (6th Cir. 1982) 671 F.2d 212 in seeking a writ of mandate to vacate the trial court's return order.

While *Krause* has some factors in common with the case at bench it is not a binding precedent. In *Krause,* two trials had been completed and the cases had come to a total settlement. (*Id.,* at p. 219.) In the case at bench the litigation was concluded before trial by a settlement agreement and the entry of a stipulated consent judgment. There has never been a trial.

It is important to recognize that in *Krause* the trial court, whose judgment was affirmed on appeal, did not release all of the discovery-produced materials. The trial judge ordered that much material be returned to the producers. The balance of the materials was ordered released, after specified categories had been subject to redaction, deletion of names, by the producers. (*Id.,* p. 217.)

We also note that the trial judge in *Krause* depended on *In re Halkin* (D.C.Cir. 1979) 598 F.2d 176, which held that First Amendment rights attached to materials made available through the discovery process. (*Krause,* at p. 219.) In that critical respect *In re Halkin* has been overruled and disapproved by the Supreme Court in *Seattle Times Co.* v. *Rhinehart, supra,* 467 U.S. 20, 21 [81 L.Ed.2d 17, 19], which held that protective orders of the type with which we are concerned do not offend the First Amendment.

Throughout their brief petitioners urge that the challenged return order offends their First Amendment rights because much of the material ordered to be returned is now in the public domain. They assert that it has already been disclosed, disseminated and released to the public pursuant to the trial court's protective orders or with the consent of the City.

To the extent that this contention is supported by the facts petitioners are correct. The truthful publication and dissemination of information which has been disclosed to the public cannot be prohibited. (*Oklahoma Publishing Co.* v. *District Court* (1977) 430 U.S. 308, 310-311 [51 L.Ed.2d 355, 358, 97 S.Ct. 1045].)

The record before us does not permit us to determine whether any of the documents subject to the return order have already been disclosed to the public and are now in the public domain. That is a question of fact which must be determined by the trial court or the agreement of the parties. The only specific references in the record to the quantities of documents which have been released to the public are statements of Michael Balter, a paralegal to petitioners' attorneys, in his declarations of April 4 and April 25, 1984, to the effect that hundreds of pages of documents have been released publicly under the protective orders.

The City concedes that the challenged order does not prohibit the republication of information which has been made public in accord with the terms of the protective orders. We add that the same exemption should apply to information which has been made public with the consent of the parties.

In view of our disposition of this proceeding we need not address this contention further.

*The Return Order*

Petitioners contend that the return order is flawed in that the trial court did not balance the competing interests of the parties before issuing that order. That contention is without merit.

In connection with the making of the return order there were, in addition to the motion for the order, memoranda of points and authorities, declarations and argument which were considered by the court. There were also three court hearings; one on April 9, 1984, and two hearings on reconsideration, one on May 10, before the Supreme Court decided *Seattle Times Co.* v. *Rhinehart, supra,* 467 U.S. 20 [81 L.Ed.2d 17] and another on June 26, 1984, after the *Seattle Times* decision. The court summarized its position in colloquy during the hearings stating, inter alia: "The point is that this lawsuit is over with the decree except for the supervisorial aspects of the decree, and the papers were produced under very finite special circumstances, and there is no reason for them being retained. . . . The record is very, very clear that every disputed discovery motion had built into it a balancing of various interests: The interest of the plaintiffs for discovery of relevant information and information with which they could prepare their trial. [¶] And on the other side, the whole litany of privileges, government privileges, privacy privileges, and in each case in which the Court ordered production, having gone through that balancing, it determined that the interests of the plaintiffs were superior. . . . And the Court determines that. [¶] What is now lacking is that tremendous, overwhelming need for litigation preparation that the plaintiffs had before is now lacking and therefore the balance tilts back in favor of the various privileges that had been asserted."

The return order of May 10, 1984, is carefully structured.[3] It is apparent that the thrust of the order is to gather the discovered documents together,

---

[3]The return order, in relevant part, provides: "Defendants' Motion for an Order Requiring the Immediate Return to Defendants of All Materials Produced to Plaintiffs Subject to Protective Orders is granted. Within sixty (60) calendar days from the date of this order,

in a secure place and manner to be approved by the court, where they will be available to the parties for several years subject to the order of the court. In practical effect, the court's order will place the documents in *custodia legis* until July 1, 1991.

### JUDICIAL DISCRETION

The City's contention that a writ of mandate is not available absent a clear showing of an abuse of discretion is technically correct but tends to be an overstatement in the context of this case. More precisely stated, we can overturn the determination of the trial court by writ of mandate only if the trial court has acted in excess of its jurisdiction. (*People* v. *Municipal Court (Byars)* (1978) 77 Cal.App.3d 294, 298 [143 Cal.Rptr. 491].) If the trial court's return order were in violation of a constitutional mandate, as petitioners here contend, or of a statute, the making of the order would necessarily be in excess of its jurisdiction and a reversible abuse of discretion.

As we have pointed out, however, the trial court's return order does not offend the First Amendment, and no one has contended that it violates any statute. Thus, the determination in the case at bench resolves itself to whether there has been an abuse of the trial court's discretion in making the return order, and we find that there was none.

This determination is in keeping with the authorities cited by the parties throughout this proceeding. In *Krause* v. *Rhodes, supra,* 671 F.2d 212, the reviewing court affirmed after holding that the decision was best left to the "discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." (*Id.,* at p. 218.)

---

plaintiffs shall return to defendants the following documents produced by defendants in this proceeding together with any and all photocopies, microfilms, or other copies of the documents in the hands of any of the plaintiffs, their attorneys, or their agents: [List of categories of documents] [¶] During the thirty (30) working day period following return of the above documents, defendants shall inventory the documents, following which the documents shall be jointly sealed by the parties, and defendants shall retain custody and control of the sealed documents returned by plaintiffs pursuant to this order until July 1, 1991, or until such other date as the Court may order. Plaintiff's counsel shall be given a copy of said inventory upon its completion. Thereafter, defendants may retain or dispose of the documents returned pursuant to this order at defendants' option. During the period of Court-ordered custody, the sealed documents may not be accessed except by order of this Court. [¶] The Court retains jurisdiction to approve of the storage and retention procedures, so that adequate safeguards exist. During the period of the inventory process referred to above, the defendants shall lodge with the Court and serve on counsel a proposal for specific retention arrangements and identify the officer of the City of Los Angeles to be responsible therefore, all for the Court's approval. [¶] The request of the plaintiffs for an order that the defendants pay to plaintiffs the costs incurred by them in copying the material ordered to be returned herein is denied."

The court found that the trial court did not abuse its discretion. (*Id.,* at p. 219.) The Supreme Court held to the same effect in *Seattle Times Co.* v. *Rhinehart, supra,* 467 U.S. 20 at pp. 34-37 [81 L.Ed.2d 17 at pp. 28-29].

 In this case, we are not called upon to decide whether, as a general rule, materials discovered pursuant to protective orders must be released, destroyed or returned upon termination of a lawsuit. We must only decide whether the order here made constitutes an abuse of the trial court's discretion. The subject return order does not deny petitioners access to the discovered materials; it merely sets forth a scheme devised by the court to securely maintain the documents and to perpetuate the safeguards provided by the protective orders while the case was pending. A mere glance at the pretrial protective orders (fn. 2) illuminates the problems inherent in attempting to continue supervision of the use of the 300,000 discovery documents post settlement, were they to remain in petitioners' possession.

In the present case, the same interests justifying the protective orders mitigate against the unfettered retention by petitioners of all of the documents provided to them under such orders. The return order under review protects petitioners' access to the materials, as needed, as well as the privacy and other interests of those named therein. We also note that the restraints imposed by the return order apply equally to petitioners and the City. We find no abuse of the trial court's discretion.

Petitioners also argue that many of the documents were voluntarily turned over to them by defendants, and thus are not the products of discovery. That point was raised before the trial court which ruled that ". . . the court rejects the argument that some of the documents were voluntarily produced. The production was not 'voluntary' in the sense that the word is usually used." Our examination of the record corroborates that ruling of the court.

Petitioners also argue that since they may be able to obtain most of the documents at issue under the California Public Records Act (Gov. Code, § 6250 et seq.), or the more far reaching Los Angeles Freedom Of Information Ordinance, they should not be compelled to return the documents under the court's order. That argument is not persuasive. The availability of the two statutory avenues of access to public records is an advantage to petitioners which does not nullify the court's discretion in regulating its own processes. In using those two remedies the petitioners will stand on equal footing with all other Californians.

Petitioners also claim that if they are to return the documents they should be paid for their cost in making copies. That point was briefed and argued

in the trial court and the court ruled against petitioners. Further, in the settlement agreement between the parties, after providing for the payment of $1,800,000 to petitioners, it was agreed that each party should bear its own costs and expenses of the litigation.

There is a compelling governmental interest that the files and records of public agencies should be complete and should contain the best evidence of the matters which they record. (See Evid. Code, §§ 1530-1532.) Therefore all original documents should be returned to the public agencies from which they were produced. Other points raised by petitioners do not require further discussion.

## CONCLUSION

We conclude that the court's return order of May 10, 1984, should be modified to provide that:

All original documents produced by defendants are to be returned to defendants.

Petitioners shall be permitted to retain a copy of, and to disclose and disseminate, all documents, or the parts thereof, which were disclosed or disseminated to the public, in accord with the terms of the protective orders or with the consent of the city, before the date of the return order, May 10, 1984.

Petitioners shall be authorized to have an observer present during the making of the inventory or, at the discretion of the court, more than one observer.

## DECISION

The appeal captioned *Coalition Against Police Abuse*, etc., et al., Appellants v. *Board of Police Commissions*, etc., et al., Respondents, 2d Civ. No. B 008972 is dismissed. Each party to bear their own costs.

The petition for writ of mandate is granted. The alternative writ, having served its purpose, is vacated.

Let a peremptory writ of mandate issue commanding respondent court to modify its order of May 10, 1984, to conform to the views expressed herein. In all other respects, the relief prayed for in the petition is denied.

Each party is to bear its own costs incurred in this proceeding.

Klein, P. J., and Lui, J., concurred.

A petition for a rehearing was denied August 30, 1985, and the opinion was modified to read as printed above. Petitioners' application for review by the Supreme Court was denied November 14, 1985.