[No. A065411. First Dist., Div. Three. Apr. 27, 1995.]

In re the Marriage of DEBRA and THOMAS C. CANDIOTTI.
DEBRA CANDIOTTI, Appellant, v.
THOMAS C. CANDIOTTI et al., Respondents.

## COUNSEL

Melvin M. Belli and Shelley R. Antonio for Appellant.

Bernard N. Wolf, Lorin B. Blum, Sharon M. Braz and M. Sue Talia for Respondents.

## OPINION

CORRIGAN, J.—Debra Candiotti[1] appeals from an order, in a family law custody and visitation proceeding, restraining her from disseminating information to third parties about the background of her ex-husband Thomas's present wife, Donna. The order spoke both to information obtained during discovery and to information independently acquired. We conclude, under

---

[1] While litigation is a formal process in which parties are seldom referred to by their first names, we do so here to bring clarity to the text and avoid confusion that might be occasioned by the fact that these parties share a common surname. (See *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1 [274 Cal.Rptr. 911].)

the circumstances of this case, the portion of the order restricting Debra from disseminating information independently obtained violates her free speech rights under the California Constitution. We therefore reverse that portion of the order and otherwise affirm.

## FACTS AND PROCEDURE

Debra and Thomas dissolved their marriage after having two children together. Following the dissolution, the court retained jurisdiction over custody and visitation issues. Thomas subsequently married his present wife, Donna, who was joined as a party so that certain restraining orders would be applicable to her, as well as to Debra and Thomas.

The following year, the parties stipulated in lieu of a hearing to the children's Christmas vacation schedule and to certain practices to be followed when driving with the children.

Prior to the stipulation, Debra had noticed Donna's deposition and requested a number of documents, including personal information, driving records, and any criminal history.[2] Donna's counsel had sought a protective order regarding the discovery demand, and the court discussed the issue with counsel in chambers. After reviewing the material and hearing argument, the court issued a temporary protective order directing Debra not to disseminate information regarding Donna's past driving record and other defined personal history to anyone besides certain specified individuals.[3]

Debra opposed the order, arguing it violated her First Amendment free speech rights. She claimed the order hampered her ability to protect her children, because she was restricted from communicating the subject information to other appropriate parties.

Debra also argued that because some of the information was acquired through outside sources, rather than through the discovery process, the court could not restrict its dissemination. Specifically, Debra alleged she had

---

[2]According to Donna and Thomas, Debra sought this information in order to restrict Donna's ability to drive with the children.

[3]The specific terms of the order, in relevant part, were as follows: "a. Information regarding Donna Candiotti's past . . . history shall not be disseminated beyond the parties, counsel and their staffs, investigators, the children's therapists, the mediator, custody evaluator or persons performing psychological testing in connection with the within litigation pending further order of court. [¶] b. All persons referred to in the previous paragraph are similarly restrained from disseminating such information other than between said group of individuals. [¶] c. Nothing in this order shall prohibit the dissemination of this information to Child Protective Services, the Department of Motor Vehicles or any law enforcement agency, so long as such dissemination is not for harassment purposes."

received an anonymous telephone call from an individual who claimed to have information related to Donna. Debra thereafter investigated these allegations and obtained information about Donna's driving and personal history.

In support of the order, Thomas asserted Debra had no legitimate reason to disseminate the information and that her sole motivation was vindictive. He argued the court's concern for protecting the best interests of the children overrode Debra's free speech rights and that the First Amendment was not designed to protect this type of speech.

Donna argued in support of the temporary protective order, urging it promoted the best interests of the children. In addition, she claimed dissemination of the information violated her privacy rights.

In determining whether the temporary protective order should become permanent, the trial court weighed Debra's right of speech against the state's interest in protecting the minor children and Donna's right to privacy. As for Donna's privacy rights, the court noted that part of the information was public record, in which Donna had little or no privacy interest. The court also found that the other records, provided by Donna's counsel at the in camera hearing, legitimately raised privacy concerns. Nevertheless, the court concluded that if Donna's privacy right alone was at issue, Debra's right to free speech would clearly prevail.

The court explained, however, that its concern for the welfare of the children justified restrictions on Debra's conduct. In particular, the court stated it would be harmful for the children to hear from the "rumor mill" disparaging comments about their stepmother or to be taunted by peers at school. The court was concerned that Debra's purpose in making the information public was to embarrass and ridicule Donna, with that effect also falling upon the children. In this regard, the court chastised the parties for their continued fighting, particularly the animosity between Debra and Donna, and noted it had previously admonished the parties to "behave like adults" for the benefit of the children.

Finally, the court stated that it had drawn the temporary order as narrowly as possible, allowing Debra to provide the information to all necessary parties, without giving her such broad rights that the information would find its way back to the children. In this regard, the court noted, it had invited counsel to make further suggestions regarding excepted parties to the order.

The court then directed the temporary protective order to remain in full force and effect for a period not to exceed three years. The order also

specified that Debra could make ex parte application to the court for further exceptions to its terms.

## DISCUSSION

This case arises from circumstances tragically common in our family law courts. Daily, judges are called upon to intervene when parents pursue their animosity toward each other to the detriment of their children. Such cases involve the most profound and compelling of interests. Matters of familial, parental, and personal autonomy must be balanced against traditional statutory and constitutional concepts. Trial judges are challenged to navigate between the Scylla of harm to innocent children and the Charybdis of undue governmental intervention. In this case, an experienced and insightful judge tried to shield two youngsters from the harmful effects of adult conflict swirling about them. We feel constrained to find, however, that the order, in part, ran afoul of constitutional principles. The order covers two separate kinds of information: that acquired during formal discovery and that independently obtained. For reasons explained below, we hold that part of the order regarding discovery material was proper, while that bearing on independently secured information was not.

In terms of disclosure, courts have treated information obtained through discovery differently from that secured by other means. Restrictions on dissemination of discovery material have withstood First Amendment challenges. (*Seattle Times Co.* v. *Rhinehart* (1984) 467 U.S. 20, 31-37 [81 L.Ed.2d 17, 25-30, 104 S.Ct. 2199]; *Coalition Against Police Abuse* v. *Superior Court* (1985) 170 Cal.App.3d 888, 899-901 [216 Cal.Rptr. 614]; see also *Moskowitz* v. *Superior Court* (1982) 137 Cal.App.3d 313, 319 [187 Cal.Rptr. 4].)[4]

In *Seattle Times*, the United States Supreme Court considered whether parties to civil litigation have a First Amendment right to disseminate, in advance of trial, information gained through pretrial discovery. (*Seattle Times Co.* v. *Rhinehart*, *supra*, 467 U.S. at p. 22 [81 L.Ed.2d at p. 20].) Rhinehart, the leader of a religious group, filed a complaint against two newspapers, alleging their stories on the organization had subjected him to ridicule, thereby affecting the group's membership and financial support. (*Id.* at p. 23 [81 L.Ed.2d at pp. 20-21].) The newspapers answered and conducted extensive discovery. Rhinehart sought a protective order limiting publication of information thus obtained on the group's members and donors. An order issued, preventing the newspapers from using materials

---

[4]*Moskowitz*, cited by Debra, did not rest on this principle, although it was recognized in dicta. (*Moskowitz* v. *Superior Court*, *supra*, 137 Cal.App.3d at p. 319.)

secured through discovery for any purpose other than trial preparation. (*Id.* at p. 27 [81 L.Ed.2d at p. 23].) The newspapers appealed, arguing information obtained through civil discovery is not different from other sources of information and, thus, is protected by the First Amendment. (*Id.* at p. 31 [81 L.Ed.2d at pp. 25-26].)

The United States Supreme Court rejected the argument. In addressing this question, the court examined "whether the 'practice in question [furthers] an important or substantial governmental interest unrelated to the suppression of expression' and whether 'the limitation of First Amendment freedoms [is] no greater than is necessary or essential to the protection of the particular governmental interest involved.' [Citations.]" (*Seattle Times Co.* v. *Rhinehart, supra,* 467 U.S. at p. 32 [81 L.Ed.2d at p. 26], bracketed text in original.) It began by noting that the discovery process is a matter of "legislative grace. A litigant has no First Amendment right of access to information made available only for purposes of trying his suit. [Citation.] Thus, continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations. [Citation.]" (*Ibid.,* fn. omitted.) The court also observed discovery material is not a public component of trial and, thus, the protective order did not place a restriction on a traditionally public source of information. Finally, and of note here, the court stated the case did not present a typical prior restraint situation, because one could publish material obtained independent of court processes; thus, free speech rights were less implicated. (*Id.* at p. 33 [81 L.Ed.2d at p. 27].)

The court concluded that a rule upholding restrictions on dissemination of information obtained through discovery allowed parties to obtain relevant information pertinent to their case, while preventing potential abuse, such as use of the information to damage a person's reputation or invade their privacy rights. Such a rule properly furthered an important governmental interest. The court held that when a protective order is properly issued on a showing of good cause and limits only the dissemination of information obtained through discovery and not other sources, it does not offend the First Amendment. (*Seattle Times Co.* v. *Rhinehart, supra,* 467 U.S. at p. 37 [81 L.Ed.2d at pp. 29-30].)

In *Coalition Against Police Abuse,* the Court of Appeal applied *Seattle Times* in a slightly different context. There, after discovery was conducted, the parties settled. Before settlement, however, the petitioners had received hundreds of thousands of documents through discovery. A large number of the documents at issue were produced subject to protective orders, and the court retained jurisdiction over their final disposition. After settlement, the

petitioners sought to keep the discovery materials, arguing they had a First Amendment right to publicize their contents and to use them for purposes beyond the litigation during which they were acquired. The appellate court, relying on *Seattle Times*, upheld the trial court orders concerning return and nondissemination of the records' contents. It held that because the protective orders were supported by good cause and were limited to discovery materials, rather than information obtained from other sources, they did not offend the First Amendment. (*Coalition Against Police Abuse* v. *Superior Court*, *supra*, 170 Cal.App.3d at p. 899.)

Here, the trial judge found a sufficient showing of good cause. Clearly the court was concerned with Debra's motivation for disseminating the information and the derivative harm that might befall the children. And, although Debra maintains that all of the material about Donna was obtained *outside* the discovery process, such an assertion runs counter to the record. The trial court specifically found that Debra obtained material both from private and court-compelled sources.[5]

■ We conclude that the part of the protective order restricting the dissemination of information obtained through Debra's discovery request is a proper restriction under *Seattle Times* and *Coalition Against Police Abuse*. But, the scope of restrictions on material independently acquired violates Debra's rights under the California Constitution.

California Constitution, article I, section 2, subdivision (a) provides: "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." As stated in *Wilson* v. *Superior Court* (1975) 13 Cal.3d 652, 658 [119 Cal.Rptr. 468, 532 P.2d 116], this provision is more definitive and inclusive than the First Amendment to the United States Constitution.

Nearly 100 years ago, the Supreme Court in *Dailey* v. *Superior Court* (1896) 112 Cal. 94, 97 [44 P. 458] explained the breadth of this provision: "The wording of this section is terse and vigorous, and its meaning so plain that construction is not needed. The right of the citizen to freely speak, write, and publish his sentiments is unlimited, but he is responsible at the hands of the law for an abuse of that right. He shall have no censor over him to whom

---

[5]The order specifically states: "Part of the records and information in question is, indeed, public record and was not obtained as part of the discovery process. Part was obtained by Debra's private investigator by methods unknown to the court, which may or may not have exceeded a mere search of public records. Other records were provided by Donna's counsel, to be examined in camera by the court after a dispute arose in deposition regarding their disclosure. All such information is covered by the restraining order in question."

he must apply for permission to speak, write, or publish, but he shall be held accountable to the law for what he speaks, what he writes, and what he publishes."

We recognize, of course, the importance of protecting a child's best interests. Courts are given broad authority to supervise and promote the welfare of children. (Fam. Code, § 3022.) For example, a court may issue a restraining order to prevent a party from disturbing the peace of a minor child. (Fam. Code, §§ 6320, 6345.) Parents are routinely ordered not to make disparaging comments about the other parent to the children or in their presence.[6]

While a court's power is broad, it is not plenary. The court may properly issue orders bearing upon parents' relationships with their children and with each other. But the order here went further, actually impinging on a parent's right to speak about another adult, outside the presence of the children. Such an order, under these circumstances, constitutes undue prior restraint of speech. It would prevent Debra from talking privately to her family, friends, coworkers, or perfect strangers about her dissatisfaction with her children's living situation.

Thomas and Donna maintain the order is constitutional because it creates a limited restraint by allowing dissemination to those with legitimate interests in the information, while still protecting the children from harm.[7] They claim the information would be used to undermine Thomas's close and meaningful relationship with his children.

---

[6] Judicial Council Form No. 1296.31A, the "Child Custody and Visitation Order," provides that "Neither parent shall make any disparaging remarks about the other parent in the presence of the minor children."

Similarly here, Debra, Donna, and Thomas stipulated that they were not to make "any derogatory or disparaging remarks about the other of them or about the other parties' family to or in the presence of the minor children or under any circumstances where the minor Candiotti children might reasonably be expected to overhear."

[7] We have found no California case challenging a family law court order on free speech grounds. Donna and Thomas, however, rely on two out-of-state decisions in support of their position that the best interests of the children should prevail. (*Schutz* v. *Schutz* (Fla. 1991) 581 So.2d 1290; *Dickson* v. *Dickson* (1974) 12 Wn.App. 183 [529 P.2d 476].) It also appears the trial court in part relied on these cases. We find them distinguishable. First, they addressed free speech rights under the *federal* Constitution. Second, both cases differ factually from this one. In *Schutz*, the trial court issued an order that the mother create in the children a loving and caring feeling toward her former husband. The order was designed to prevent the mother from further instilling in the children negative opinions about their father. The mother argued the order violated her First Amendment rights, but the appellate court disagreed, stating any burden on her First Amendment rights was only incidental. (*Schutz, supra,* at p. 1292.) In *Dickson*, the appellate court held an ex-husband could be prevented from making *defamatory* comments about his ex-wife. (*Dickson, supra,* 529 P.2d at pp. 478-479.)

It is certainly in the best interests of any children of divorce that the adults in their lives act in a mature and courteous manner, treating each other with dignity and respect. Any judge who has sat in a family law department and observed the destructive and vindictive behavior brought to light there has yearned to be able to effect such results. For better or ill, such outcomes may be beyond the power of mortal third parties to accomplish and beyond the authorized ambit of judicial order.

Thus, while we agree that the court certainly has the power to prevent Debra from undermining Thomas's parental relationship by alienating the children from Donna, the order here was much more far-reaching, aimed at conduct that might cause others, outside the immediate family, to think ill of Donna. Such remarks by Debra may be rude or unkind. They may be motivated by hostility.[8] To the extent they are libelous, they may be actionable. But they are too attenuated from conduct directly affecting the children to support a prior restraint on Debra's constitutional right to utter them.

### DISPOSITION

That part of the order banning dissemination of information obtained through discovery is affirmed. That part of the order banning dissemination of independently acquired materials is reversed.[9] Each party is to bear its own costs on appeal.

Chin, P. J., and Merrill, J., concurred.

A petition for a rehearing was denied May 10, 1995.

---

[8]The trial court noted that, during the in-chambers discussion of the issue, Debra's counsel admitted Debra had no legitimate reason for disseminating the information.

[9]In light of our ruling, it is unnecessary to discuss whether the trial court lacked jurisdiction to prohibit Debra's dissemination of information obtained outside of the discovery process.