756 A.2d 647 (2000)
333 N.J. Super. 607
William E. BORRA, III, Plaintiff,
v.
Jill BORRA, Defendant.
Superior Court of New Jersey, Chancery Division, Family Part, Bergen County.
Decided March 29, 2000.
Robert L. Ritter, Hackensack, for Plaintiff (Schiffman, Berger, Abraham, Kaufman & Ritter, P.C., attorneys; Mr. Ritter, on brief).
Dennis P. Lahiff, Fair Lawn, for Defendant (Mr. Lahiff, on brief).
TORACK, J.S.C.
The issue presented is one of first impression: whether or not a Family Court can enjoin an ex-husband from contesting an ex-wife's application for membership in *648 a country club in which the parties were members during the marriage. The exhusband remains a member post-judgment. Both parties enjoyed an active social life at the country club during the marriage. The children of the marriage have a significant involvement in activities provided at the club.
The parties were married on June 25, 1978. Two children were born of the marriage, William age eighteen, and Erik age eleven. The complaint for divorce was filed by plaintiff, William E. Borra, III, (hereinafter "the husband"), on October 20, 1998. The parties entered into a property settlement agreement on March 7, 2000 resolving the majority of issues surrounding the divorce litigation. The parties provided in the property settlement agreement that the country club issue would be submitted to the court for determination. On March 15, 2000 the parties appeared before this court to be heard. The Final Judgment of Divorce was subsequently entered on March 29, 2000.
The parties joined the Tuxedo Country Club (hereinafter "the Club") in 1984. The initial bond for membership was paid from joint marital funds, as were the monthly membership fees. Under Club regulations the membership was acquired in the husband's name. The defendant, Jill Borra (hereinafter "the wife"), was extensively involved in Club activities, chairing various functions at the Club, hosting dinner parties for members, arranging golf tournaments with other country clubs, assisting in fundraising for tournaments, and attending various business meetings. The children regularly participate in golf lessons, children's tournaments, activities at the swimming pool, and other events at the Club. Since the parties' separation in April 1999, both parties have continued to regularly use and enjoy the Club facilities. During that time, they encountered each other only once at the Club. No words were exchanged.
As part of equitable distribution, the club membership and its value went to the husband. Once divorced, the wife will be allowed to use the facilities only as a "guest," limiting her access to the golf course, tennis courts, the pool, etc., to once every thirty days. The children are allowed to regularly use the facilities and to participate in the various activities and events offered by the Club. The husband, of course, is entitled to unlimited access to the facilities and activities as a full member.
The wife has applied for membership in her own name, at her own expense. Upon filing the wife's name will be posted at the Club for ten days, during which time any member can object. After expiration of the ten-day period, the governing body makes the final determination on the application.
The husband intends to object to the wife's application. His reason for objection is that he did not want to encounter the wife while he is at the Club either alone or with another woman. The husband testified that he would feel uncomfortable and embarrassed if the wife were present while he is at the Club with his female companion. The wife's concern is that the husband's formal objection will preclude her from membership in the Club.
The court found at the divorce hearing that any contact between the parties at the Club would be insignificant. The court also found that although there may be some casual, indirect contact at certain social events, it is difficult to perceive how this contact would cause the husband any real disturbance. The court balanced the reasons offered by each party and determined that the balance of equities weighed heavily in favor of the wife. The court further found the husband to be acting in bad faith in attempting to exclude the wife from participating in the children's extracurricular activities, and to control the wife's social interaction with adults. The husband's position further represents an unwarranted intrusion into *649 the wife's parity and freedom of movement in furtherance of her social independence. The husband's objection was unreasonable, unfair, arbitrary, and the product of anger and vengeance. On the other side, the wife was found to be acting in good faith. The wife simply wants to maintain the social life to which she has grown accustomed and to remain involved in the childrens' activities. In the best interests of the parties and the children, the husband was restrained from formally objecting to the wife's application.

I. PLAINTIFF'S MOTION FOR RECONSIDERATION
The husband has now filed a Notice of Motion for Reconsideration raising state and federal constitutional issues, seeking to dissolve the restraint imposed upon him. The husband's position is that the court, by enjoining him from objecting to the wife's application for membership into the Club, has violated his freedom of speech rights under the New Jersey Constitution. Article I, Section 6 of the New Jersey Constitution provides:
Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press.

[N.J. Const. art I, § 6.]
Based upon this provision, the husband argues that the judicial restraint imposed upon him effectively serves as a "prior restraint" and is therefore unconstitutional.
In support of his position, the husband cites In re Marriage of Candiotti 34 Cal.App.4th 718, 40Cal.Rptr.2d 299(1995) In Candiotti the California trial court issued an injunction prohibiting the publication of certain comments by the ex-wife relating to the ex-husband's new wife. The trial court justified the restriction based upon its concerns with the ex-wife's motivation for disseminating the information and the derivative harm that might befall the children of the prior marriage. Id. at 724, 40 Cal.Rptr.2d 299 The California Court of Appeals reversed the trial court and dissolved the injunction finding that it was a "prior restraint" in violation of the California Constitution, which is virtually identical to the New Jersey Constitution. Ibid. The California Court of Appeals acknowledged that it had the power to "issue orders bearing upon parties' relationship with their children and with each other." Id. at 725, 40 Cal.Rptr.2d 299. However, the court went on to hold that the order went further because it actually impinged on a person's right to speak about another adult, outside the presence of the children, and therefore, the court found no basis to continue the restraint. Ibid. The California Court of Appeals held that the comments by the ex-wife were too attenuated from conduct directly affecting the children to support a prior restraint on the exwife's constitutional right to utter them. Ibid; but see In re Tiffany G., 29 Cal.App.4th 443, 35 Cal.Rptr.2d 8 (1994) (order prohibiting stepfather from disseminating confidential documents generated during dependency proceeding was not invalid prior restraint or violation of stepfather's First Amendment speech rights).
However, the Candiotti case is not "on all fours" with the present situation. The Candiotti case dealt with the dissemination of information regarding a step-mother and the possible indirect effects such comments may have on the children. In the present matter the court is faced with the direct and harmful effects likely to be suffered by the children as a result of their father openly seeking to exclude their mother from the Club. This situation differs substantially from the "attenuated" circumstances found in Candiotti. There exists a far greater likelihood that the husband's objection to the wife's application for membership will have a direct and harmful affect upon the children.

*650 II. EXERCISE OF PARENS PATRIAE JURISDICTION
The court rests its decision upon its inherent parens patriae authority. The exercise of parens patriae jurisdiction is always foremost, such that when presented with a choice between parent's rights and children's rights, children's welfare and best interests will always be paramount. Matter of Guardianship of J.C., 129 N.J. 1, 10, 608 A.2d 1312 (1992); Pelow v. Pelow, 300 N.J.Super. 634, 639, 693 A.2d 564 (Ch.Div.1996); Lippincott v. Lippincott, 97 N.J.Eq. 517, 519-21, 128 A. 254 (E. & A. 1925). In this context, despite the husband's argument that the Court has infringed upon his rights of freedom of speech, the court's first and primary concern must be the welfare of the children.
Decisional law supports the position that injunctive relief is proper where the welfare of minor children is involved. In Dickson v. Dickson, 12 Wash.App. 183, 529 P.2d 476 (1974), cert. denied, 423 U.S. 832, 96 S.Ct. 53, 46 L.Ed.2d 49 (1975), a Washington court enjoined an ex-husband from making defamatory comments about the ex-wife due to the present threat of emotional harm to the ex-wife, and the clear threat of detrimental emotional effect on the children. In the Dickson case, the exhusband asserted similar arguments, specifically that the injunction denied him rights of free speech. The Dickson court found that First Amendment rights are not absolute. Id. at 186, 529 P.2d 476. This finding has ample support in New Jersey case law as well. New Jersey courts have consistently recognized that the "best interests" of the children can be made paramount to other fundamental rights. See Holder v. Polanski, 111 N.J. 344, 544 A.2d 852 (1988) (restricting the freedom of a custodial parent to move out of state when contrary to the best interests of the children); In re Guardianship of K.H.O., 161 N.J. 337, 347, 736 A.2d 1246 (1999) (parental rights, though fundamentally important, are not absolute); Mishlen v. Mishlen, 305 N.J.Super. 643, 702 A.2d 1384 (App.Div.1997) (restraining custodial parent from exposing children to her current boyfriend did not infringe on her constitutional right to marry).
In Dickson the Court of Appeals of Washington found that "in addition to the indirect effect this will have on the children because their mother will be upset, there will be a direct effect on them through damage to the reputation of their family and to their feelings about their mother." Ibid. Therefore, in balancing the equities, the Dickson Court held that the interference with the ex-wife's privacy and the children's well being outweighed the ex-husband's absolute exercise of his First Amendment rights. Id. at 188, 529 P.2d 476.
Most relevant to the present case is the Dickson Court's finding that the conduct of the ex-husband interfered with the welfare of the minor children. The Dickson Court held,
Many of the things that [Mr. Dickson] did were naturally very upsetting to Mrs. Dickson and threatened her emotional health. It would be naive to assume that Mrs. Dickson's unhappiness did not have a harmful effect upon [the minor children] and on Mrs. Dickson's ability to raise them. The effect upon their mother could not help but to embitter the children toward their father.

Id. at 189, 529 P.2d 476.]
This court is faced with a similar situation. It is without doubt that a substantial part of the wife's life is invested in the Club. The children are significantly involved in Club activities in which the wife has always take part. If the wife's membership is declined, surely she would be emotionally harmed and, in turn, the children would feel this harm as well. If the husband is permitted to file a formal objection to the wife's application and she is subsequently denied membership, then the husband and the wife are likely to be the target of blame and resentment from each other and from the children as well, depending *651 upon each parent's influence on the children. This result would occur even if the husband's formal objection is not the deciding factor in the wife's application. The court cannot predict the outcome of the wife's application, but the court is all too aware of the harmful effects upon children caught in parental conflicts. The husband's objection to the wife's application can only work to the detriment of the children and their relationship with the parties, regardless of the final determination by the Club's governing body.

III. LIMITED FORM OF RESTRAINT
Further support for the injunction is in the limited context in which the injunction was issued. The husband is enjoined only from formally objecting to the wife's application for membership. The husband did not contend that his objection is based upon some misconduct or wrong doing by the wife at the Club. Rather, the husband's reasons for objecting are found to emanate from bad faith. In Schutz v. Schutz, 581 So.2d 1290 (Fla.1991), the Florida court found that an order directing the mother to "create in the minds of the children a loving and caring feeling toward the father" could be sustained against a First Amendment challenge if it "furthers an important or substantial government interest.... and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." Id. at 1292, citing United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968).
The restraint in the present matter is very limited in form and is incidental to the important governmental interest in protecting and promoting the welfare of children. Further, this restraint is the least restrictive means to protect the children's best interests under these circumstances. See also In Re Marriage of Olson, 69 Wash.App. 621, 850 P.2d 527 (1993) (no First Amendment violation in trial court's prohibiting against "disparaging remarks").
This holding is strengthened by the New Jersey Supreme Court's decision in Murray v. Lawson, 138 N.J. 206, 649 A.2d 1253 (1994), cert. denied, 515 U.S. 1110, 115 S.Ct. 2264, 132 L.Ed.2d 269 (1995), which held, in part, that not all injunctions that "incidentally affect expression are prior restraints...." Id. at 222, 649 A.2d 1253, citing Madsen v. Women's Health Center, Inc., 512 U.S. 753, 764 n. 2, 114 S.Ct. 2516, 2524 n. 2, 129 L.Ed.2d 593, 607 n. 2 (1994). In determining whether or not a restriction is in fact a "prior restraint" one of the factors a court considers is whether the restraint prevents the expression of a message. Ibid. The husband is not completely restrained from expressing his feelings or his "message." He is restricted only from voicing his objection to the governing body of the Club. The injunction is not a complete preclusion. The injunction serves to enjoin only that act which will interfere with the welfare of the children, as well as the wife's parity of social and recreational movement. Id. at 224, 649 A.2d 1253.

IV. CONCLUSION
In conclusion, the wife is permitted to seek continuation of her membership free from bad faith interference of the husband. It is clear that the husband wishes to continue the combat of the divorce litigation post-judgment and to exercise control over the wife's social life.
The incidental, minor restriction upon the husband's right to make a formal objection to the governing body of the Club is not constitutionally prohibited in light of the paramount parens patriae interest in the welfare of the children, as well as the wife's right of parity of movement and social independence. The court does not deny that the husband has a First Amendment right to speak his mind freely. However, counterbalancing the restriction on his First Amendment rights is the State's interest in preserving and fostering a healthy relationship between parents and their children. In re Marriage of Olson, *652 supra at 630, 850 P.2d 527. Therefore, plaintiff's Motion for Reconsideration is hereby denied. The injunction issued upon the husband shall remain.