Filed 2/26/19; pub. order 3/28/19 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BERTHA A. MOLINARO, | B282014 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BD643016 |
| v. | |
| MICHAEL M. MOLINARO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Amy M. Pellman, Judge. Affirmed in part, reversed in part, with directions.

Michael M. Molinaro, in pro. per., for Defendant and Appellant.

Lauren Longeretta for Plaintiff and Respondent.

Geoffrey L. Graybill for The National Coalition for Men as Amicus Curiae on behalf of Defendant and Appellant.

Michael Molinaro appeals from a restraining order issued under the Domestic Violence Prevention Act (DVPA) (Fam. Code, § 6200 et seq.).[1] We conclude the part of the restraining order prohibiting Michael from posting anything about his divorce case on Facebook constitutes an overbroad, invalid restraint on his freedom of speech. We therefore will reverse that provision and direct the trial court to strike it from the restraining order. We affirm the restraining order in all other respects.[2]

**FACTS AND PROCEDURAL BACKGROUND**

On July 11, 2016, Bertha Molinaro filed a petition for dissolution of her marriage to her husband Michael, citing "irreconcilable differences." The Molinaros had been married since June 1997.

On January 6, 2017, Bertha filed an ex parte application for a domestic violence restraining order using the prescribed Judicial Council Form DV-100. In a supporting declaration, Bertha asserted the following: On January 1, 2017, Bertha began to move out of the family home with the help of her siblings and other family. After a verbal altercation with Bertha and some of the family members, Michael moved his car to block the moving truck from exiting the home's driveway. Bertha called the police, who eventually detained Michael. Later that day, she removed the rest of her belongings from the house. Michael had physically

---

[1] Statutory references are to the Family Code unless otherwise noted. For clarity, we will refer to the parties by their first names.

[2] In his opening brief, Michael appeared to challenge a custody and visitation order issued concurrently with the domestic violence restraining order. However, at oral argument he acknowledged the interim order is not subject to our appellate jurisdiction.

restricted Bertha from leaving the home on two other occasions—once by blocking the front door and another time by blocking her car in the home's carport.  Before filing for divorce, Bertha had installed locks on her bedroom door "because [Michael] was acting erratic and [she] was afraid of him."  Michael threatened to "throw a chair though the bedroom window" if she did not remove the locks.

Bertha declared she was "afraid of what Michael might do in retaliation for my moving out."  She continued, "I wanted to keep my address confidential but he found out where I moved to and he is now posting on social media derogatory comments about me and he posted a picture of my new residence and he included the address.  He is angry at me for moving out and I am afraid for my safety and the safety of my children."

The application requested a domestic violence restraining order (and a temporary restraining order in advance of a hearing) commanding Michael to stay at least 100 yards away from Bertha and their three children—their 18-year-old daughter and their two sons, then ages 17 and 13, respectively.  She also asked the court to order Michael to attend a batterer intervention program.  On a separate Form DV-105, Bertha requested legal and physical custody of the couple's two minor sons, and no visitation for Michael until the hearing.

The court denied the request for a temporary restraining order and set a January 26, 2017 hearing to receive further evidence on the application.  In denying the temporary restraining order, the court checked a box on Form DV-109 indicating:  "The facts as stated in form DV-100 do not show reasonable proof of a past act or acts of abuse."

On January 26, 2017, Michael filed a request to continue the hearing.  The parties appeared before Judge Thomas Trent Lewis the same day.  Bertha did not oppose the request, but

3

asked that Michael "please stop posting everything about the case on Facebook," and "stop giving the children all of my pleadings." Michael responded that he had only given the children copies of "the domestic violence restraining order, not of the divorce petition." When the court asked, "what makes it okay to give the 13-year-old and the 17-year-old copies of the court papers," Michael answered, "My best judgment, Your Honor."

The court explained to Michael that it intended to "issue an order against you today that precludes you from discussing the matter with the 13-year-old and the 17-year-old," warning him that courts may "consider parents insinuating children into the court process" in making custody determinations. Michael objected to the order, arguing Bertha had "emptied [their] home equity of $250,000 [*sic*]" and "relocated [his] children to a mystery house without informing [him]." The court acknowledged the objection, but asked Michael to confirm he understood the terms of the order. Michael responded, "Okay. I understand the what. I question the sanity." The court clarified the order did not preclude Michael from posting on Facebook, except to the extent those postings "would otherwise violate the no-discussion order."

On the parties' stipulation, the court continued the hearing to February 15, 2017. Judge Lewis's written order stated, "Neither party is to discuss any aspect of the case with the minor children until further order of the court—including Facebook postings [about the] subject case matter."

On February 15, 2017, the parties appeared before Judge Amy M. Pellman. The court clerk swore both Bertha and Michael. Bertha testified Michael had "showed up uninvited to the house" where she and the couple's children were living, had posted on Facebook "about the divorce, about everything that's happening," and had sent police to the house "to do a wellness check on the kids" when she was at her teaching job. Bertha said

4

Michael "posted to Facebook that [she] stole $250,000 from [their] home equity line, that [she] used it all and ran away with it." She continued, "He says that I'm crazy and having hallucinations." Bertha said Michael had concluded some emails to her and her attorney with "F.O.A.D." She looked the acronym up and it "stands for fuck off and die." Bertha testified she "wasn't sure" if the "F.O.A.D." comment was directed at her or her lawyer, but noted that Michael had called her "a bitch a few times." Bertha said Michael's "name calling" was "unsettling" and "very stressful." She also testified the couple's sons were "both depressed" and their daughter "was particularly upset because she had to go back to the house to visit her dogs and [Michael] . . . threatened to euthanize the dogs."

Bertha testified she "fear[ed] for her safety and [Michael's] conduct [was] just getting worse and worse." She said Michael's behavior toward her at the earlier hearing was "threatening." She repeated, "I fear for my safety and that of my children."[3]

---

[3] Michael objected to several parts of Bertha's testimony, including a hearsay objection to their daughter's statement about Michael's threat to euthanize the dog. He also made a lay opinion objection to the testimony describing his behavior as "threatening." The court overruled the objections, and we find no error in the evidentiary rulings. The court properly admitted the daughter's out of court statement as circumstantial evidence of her state of mind—that is, why she was "upset" when she returned from visiting her dogs. (Evid. Code, § 1250, subd. (a)(1); see also *People v. Frye* (1985) 166 Cal.App.3d 941, 950 ["Evidence of a declarant's statement is not hearsay if it relates facts other than declarant's state of mind and is offered to circumstantially prove the declarant's state of mind."].) As for Michael's lay opinion objection, the court properly received the testimony as evidence that Bertha felt threatened by Michael's conduct. (Evid. Code, § 800; *People v. Farnam* (2002) 28 Cal.4th 107, 153 ["A lay witness may testify to an opinion if it is rationally based

5

Michael declined the court's invitation to cross-examine Bertha, and said he would not testify on his own behalf. The court asked if Michael planned to call any witnesses. He responded, "I'd like to call my children." The court denied the request, stating, "I don't need to hear" from the children. Although Michael suggested that Judge Lewis had made a "previous court order that [the children] attend," he made no offer of proof regarding the relevance of their testimony. When Judge Pellman responded that she was not bound by the "previous court," which had not had the benefit of Bertha's testimony, Michael acknowledged the ruling and responded, "Quite sure. No evidence."[4]

The court granted Bertha's application for a restraining order, stating the order would be for three years and Michael was to stay 100 yards away from Bertha and the three children. The court also ordered Michael not "to post anything on Facebook . . . in regards to this action" and "not to contact the mother or the children regarding this action."

---

on the witness's perception and if it is helpful to a clear understanding of his testimony."].)

[4] Michael argues the trial court erred by barring the children's testimony; however, as discussed, the record shows he made no offer of proof, before the hearing he did not file and serve a witness list with a brief description of the anticipated testimony (see § 217, subd. (c)), and, on appeal, he has made no attempt to show how he was prejudiced by the exclusion of the testimony. He has forfeited the issue as a basis for appellate relief. (See *Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 308 ["appellant bears the burden to show it is reasonably probable he or she would have received a more favorable result at trial had the error not occurred"].)

6

The court asked Michael if he understood the order. Michael responded, "No, I don't. I think you're insane. I don't understand a word you are saying. It lacks reason, Your Honor. There was no evidentiary foundation for your order. And the prior order of court dated January 6, 2017, that said the facts as stated do not show reasonable proof of past act or acts of abuse was the correct order." The court acknowledged Michael's objection, and asked the parties what they requested regarding custody and visitation of the minor children.

Bertha's counsel asked to arrange "reasonable visitation with the kids." She suggested the parties go down to the mediation office to "work out the parenting plan for the kids." The court suggested mediation might not be productive at the moment, in view of Michael's "behavior." Michael interrupted the court, demanding to know "[w]hat behavior." The bailiff asked Michael not to "scream," and the court noted Michael had been "[y]elling in court."

The court ordered Michael would have monitored visits with the children in "a neutral setting." Michael asked that the visits take place at the children's residence. The court denied the request, admonishing Michael that he was to stay 100 yards away from the residence. The court also ordered that he was to work with Bertha's counsel to find a professional monitor. Michael responded, "No, I'm not." The court granted legal and physical custody to Bertha.

At Bertha's request, the court also ordered Michael to attend anger management classes. Michael responded, "On what basis? There's been no abuse, Your Honor."[5] The court explained

---

[5] The objection prompted another exchange in which the court and bailiff cautioned Michael against screaming or "raising [his] voice and yelling." When the bailiff, for a third time,

7

it was ordering anger management, not a 52-week batterer's intervention program. Michael continued to respond indignantly: He told the judge, "Why don't you put me behind bars[?]"; asked, "How fast can I commit contempt of court by going to none of them, Your Honor?"; and told the court, "I have no respect for the court, Your Honor."

On February 15, 2017, the court entered the restraining order and child custody and visitation order. The order listed the couple's three children as "additional protected persons," provided for an expiration date in three years, included no-contact and stay-away orders, and ordered Michael to attend anger management classes once a week for six months. In an attachment to the restraining order, the court ordered the parties "not to post anything about the case on Facebook" and "not to discuss the case with the children."

On March 10, 2017, Michael filed a motion for a new trial "and/or to vacate judgment/order dated February 15, 2017." Among other things, Michael argued the court committed "misconduct" by precluding him from calling his children as witnesses; there was no evidence of "abuse" to support the restraining order; the order was the product of unfair "surprise" because the parties had not conducted a mandatory mediation on child custody; and the order was "based on written conduct" that was constitutionally protected free speech. On March 30, 2017, the court denied Michael's new trial motion, finding "no legal basis for granting the motion."

---

admonished Michael not to scream, Michael responded by disparaging the "family law bar."

Michael timely appealed from the February 15, 2017 domestic violence restraining order.[6]

## DISCUSSION

### 1. *Substantial Evidence Supports the Abuse Finding*

Under the DVPA, a court is authorized to issue a protective order "to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved" upon "reasonable proof of a past act or acts of abuse." (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 225, 228; *Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 782; accord, §§ 6220, 6300.) Abuse includes " 'engag[ing] in any behavior that has been or could be enjoined' " under section 6320. (*Davila*, at p. 226; § 6203, subd. (a)(4).) Behavior that may be enjoined under section 6320 includes stalking, threatening, and harassing. (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334 (*Nakamura*); accord, § 6320, subd. (a).) "A court may also enjoin 'disturbing the peace of

---

[6] Bertha contends Michael is "appealing a non-appealable issue" and he "should have filed a writ" petition. Bertha is mistaken. The issuance of a restraining order is appealable as an order granting an injunction under Code of Civil Procedure section 904.1, subdivision (a)(6).

On December 18, 2017, Michael filed a motion to strike Bertha's respondent's brief and a request for sanctions, arguing the brief " 'unreasonably' " violated the California Rules of Court governing the form and content of appellate briefs. We originally deferred ruling on the motion until we had had an opportunity to consider the merits of the appeal. We later vacated the order and denied the motion to strike. Michael then filed a renewed motion to strike and for sanctions, which we denied. To the extent there is any doubt about our ruling on the December 18, 2017 request for sanctions, that request for sanctions is also denied.

[another] party, and, in the discretion of the court, on a showing of good cause, of other named family or household members.' " (*Nakamura,* at p. 334.)

The DVPA vests the court with discretion to issue a restraining order "simply on the basis of an affidavit showing past abuse." (*Nakamura, supra,* 156 Cal.App.4th at p. 334.) The burden of proof is by a preponderance of the evidence. (*Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 90, fn. 14; *Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137.) The DVPA "confer[s] a discretion designed to be exercised liberally, at least more liberally than a trial court's discretion to restrain civil harassment generally." (*Nakamura*, at p. 334.)

We review the grant of a DVPA restraining order for abuse of discretion, and, to the extent we are called to review the court's factual findings, we apply the substantial evidence standard of review. (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780; *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1426-1427.) In reviewing the evidence, we examine the entire record to determine whether there is any substantial evidence—contradicted or uncontradicted—to support the trial court's findings. (*Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143 (*Burquet*).) We must accept as true all evidence supporting the trial court's findings, resolving every conflict in favor of the judgment. (*Ibid.*) We do not determine credibility or reweigh the evidence. (*Katsura v. City of San Buenaventura* (2007) 155 Cal.App.4th 104, 107.) If substantial evidence supports the judgment, reversal is not warranted even if facts exist that would support a contrary finding. (*Ibid.*)

Michael argues the trial court erred by basing its abuse finding on a series of Facebook posts he made about the divorce action. He contends the First Amendment protects his right to publish information about a pending court proceeding on a public

10

forum like Facebook and, absent a true threat, his right to free speech precludes the trial court from making an adverse finding against him based on those statements.

Contrary to Michael's premise, there is little indication in the record that the trial court received his Facebook posts into evidence at the restraining order hearing. During Bertha's testimony, her attorney attempted to show Bertha "pictures" of Michael's Facebook posts and to question Bertha about the posts' contents. The court stopped counsel, asking if she had "marked" the pictures and whether she was prepared to "submit[ ] evidence or not." Although Bertha's attorney eventually asked Bertha whether Michael had posted information about the divorce on Facebook, it does not appear that the court received the posts into evidence or that the court reviewed the posts in making the abuse finding.

In any event, even if we accept Michael's premise that the posts were in evidence, this alone is not grounds to reverse the restraining order. As we discuss below, although orders enjoining the dissemination of information outside the immediate family may impermissibly infringe upon the constitutionally protected right of free speech, in this case we have no reason to assume the trial court relied upon Michael's Facebook posts in making the abuse finding. On the contrary, because there was substantial evidence, apart from the posts, to support the finding, we will presume the court relied on that other evidence in issuing the domestic violence restraining order. (See, e.g., *Lister v. Bowen* (2013) 215 Cal.App.4th 319, 337 [because lower court judgment is presumed correct, appellate court would not find restraining order unconstitutionally overbroad absent clear showing in record that order infringed appellant's right of association].)

11

Critically, Bertha was not required to show Michael physically assaulted or struck her, because section 6320 "provides that 'the requisite abuse need not be actual infliction of physical injury or assault.' " (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1496 (*Nadkarni*); *Conness v. Satram* (2004) 122 Cal.App.4th 197, 202.) "To the contrary, section 6320 lists several types of nonviolent conduct that may constitute abuse within the meaning of the DVPA," including " 'disturbing the peace of the other party,' " which "may be properly understood as conduct that destroys [another's] mental or emotional calm." (*Nadkarni,* at pp. 1496-1497.) This construction, "comports with the legislative history of the DVPA," which "reflect[s] the Legislature's goal of reducing domestic violence and its recognition that '[i]t is virtually impossible for a statute to anticipate every circumstance or need of the persons whom it may be intended to protect.' " (*Id.* at pp. 1497-1498.) Because "the Legislature intended that the DVPA be broadly construed in order to accomplish th[is] purpose," the court in *Nadkarni* held "the plain meaning of the phrase 'disturbing the peace' in section 6320 may include, as abuse within the meaning of the DVPA, a former husband's alleged conduct in destroying the mental or emotional calm of his former wife." (*Id.* at p. 1498.)

In *Burquet*, our colleagues in Division 5 applied the *Nadkarni* court's construction of disturbing the peace to hold a defendant's "course of conduct of contacting plaintiff by phone, e-mail, and text, . . . and arriving at her residence unannounced and uninvited, and then refusing to leave" constituted abuse under the DVPA. (*Burquet, supra,* 223 Cal.App.4th at p. 1144.) There, the plaintiff's ex-boyfriend appeared outside her residence despite the plaintiff's requests that he not contact her. When she pleaded with him, " 'Please leave, I'm scared[,] I will call the police,' " he shouted through a window, " 'I want to see you do

12

that,' " and paced around her porch for about 10 minutes, leaving only just before the police arrived. (*Id.* at pp. 1142-1143.) The trial court granted the domestic violence restraining order, observing, " 'I see uninvited contact that made the petitioner afraid because he would not leave and showed up [out] of nowhere uninvited, and unannounced.' " (*Id.* at p. 1143.) Rejecting the defendant's contention that the proper "definition of disturbing the peace" required evidence of " 'acts that are themselves violent' " (*id.* at pp. 1144-1145), the *Burquet* court held "[t]here was substantial evidence presented at trial to support the trial court's finding that defendant disturbed the peace of plaintiff, an act of 'abuse' under the DVPA." (*Id.* at p. 1147; see also *Nadkarni, supra,* 173 Cal.App.4th at pp. 1498-1499 [ex-husband's conduct, including accessing, reading, and publicly disclosing the content of ex-wife's confidential emails, caused her to suffer embarrassment and "to fear for her safety"; this "destruction of her mental or emotional calm" could constitute "disturbing the peace of" the ex-wife, "a form of abuse within the meaning of the DVPA"].)

Even without Michael's Facebook posts, the evidence was sufficient to show conduct that constituted "disturbing the peace of the other party" (§ 6320, subd. (a)) and, hence, "abuse" as defined in the DVPA (§ 6203, subd. (a)(4)). Bertha's sworn declaration and testimony established that Michael detained Bertha against her will by using his car to block her moving truck from leaving the home; he was belligerent during the confrontation "and had to be restrained" by police officers who responded to the scene; on another occasion he "blocked the front entrance of the family residence so no one could go out the front door"; on still another occasion he "blocked [Bertha's] car in the carport so [she] could not leave the house"; he threatened to "throw a chair through the bedroom window" when Bertha

13

refused to remove locks from her bedroom door; and he "showed up uninvited to the house" she had moved to, despite Bertha's efforts to keep the address confidential. Bertha testified that Michael's conduct was "unsettling" and "very stressful," and that she was "afraid of what [he] might do in retaliation for [her] moving out." She said she had "lost 20 pounds since the whole thing started." This evidence was plainly sufficient to support a finding that Michael's conduct "destroy[ed] the mental or emotional calm of his [estranged] wife." (*Nadkarni, supra,* 173 Cal.App.4th at p. 1498; *Burquet, supra,* 223 Cal.App.4th at pp. 1146-1147.) Notwithstanding Michael's objection to the restriction against posting on Facebook, substantial evidence supports the trial court's abuse finding.

2. ***Michael Forfeited His "Void for Vagueness" Challenge to the DVPA***

On appeal, Michael contends for the first time in these proceedings that the *Nadkarni* court's construction of "abuse" and "disturbing the peace" renders the DVPA unconstitutionally vague because it could allow "a mother [to] obtain a restraining order because her husband contacted her adult daughter." He also argues the DVPA is facially vague because the phrase defining abuse as "any behavior that has been *or could be* enjoined pursuant to Section 6320" (§ 6203, subd. (a)(4), italics added) invites the judiciary to create definitions of "abuse" for conduct that "was never enjoined, but that 'could be' enjoined, such as 'contacting' a daughter, or 'coming within a distance' of a daughter." Because Michael did not make this argument in the trial court, he has forfeited this constitutional challenge by failing to raise it below. (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 958 (*Minkin*).) And, the argument lacks merit in any event.

14

"A party typically forfeits constitutional issues not raised in earlier civil proceedings." (*Minkin, supra,* 11 Cal.App.5th at p. 958.) This is so because, when a party contends a law is unconstitutionally vague, the court examines the party's *actual conduct* before analyzing other *hypothetical applications of the law* (see *Village of Hoffman Est. v. Flipside, Hoffman Est.* (1982) 455 U.S. 489, 494-495), and this is an assessment best conducted first in the trial court. This is true even when the court analyzes a facial challenge to the law on vagueness grounds. (See *ibid.*) Although a court may relax this rule to permit a party to raise new theories, this is appropriate "[o]nly when the issue presented involves a purely legal question, on an uncontroverted record and requires no factual determinations." (*Minkin,* 11 Cal.App.5th at p. 958.) The application of "[t]his forgiving approach" " 'is largely a question of an appellate court's discretion.' " (*Id.* at pp. 958-959.)

At one point in his opening brief, Michael states, "This matter . . . presents predominantly pure question [*sic*] of law on undisputed facts." Yet Michael devotes many pages of his brief to a "statement of facts," citing, among other things, his own declaration filed in support of his motion for a new trial, where he attempts to explain his conduct and disputes Bertha's account of the events that occurred before and after she filed a petition to dissolve the marriage. In short, this is not a case involving "an uncontroverted record" requiring "no factual determinations." (*Minkin,* 11 Cal.App.5th at p. 958.)

In any event, even if this were such a case, and we exercised our discretion to consider Michael's constitutional challenge to the DVPA, we would find no constitutional infirmity. "A party making a facial challenge to a statute's constitutionality must meet ' "exacting" ' standards. [Citation.] Under the strictest test, the challenger must show that the statute

15

inevitably poses a present total and fatal conflict with the constitution. Under the more lenient standard, we ask whether the statute is unconstitutional in the generality or great majority of cases." (*Ivory Education Institute v. Department of Fish & Wildlife* (2018) 28 Cal.App.5th 975, 981.) "There is a strong presumption that statutes must be upheld unless their unconstitutionality is clear, positive, and unmistakable. . . . Only a reasonable degree of certainty is required." (*Ibid*.)

As noted, section 6203, subdivision (a)(4) defines "abuse" for purposes of the DVPA to include "engag[ing] in any behavior that has been or could be enjoined pursuant to Section 6320." Michael argues that language "has left the statute easily used in derogation of fundamental rights and liberties." We see no vagueness problem. The "could be" language conveys a temporal concept: the statute addresses behavior that already has been enjoined or that qualifies as enjoinable, even if not yet enjoined, or never enjoined. Section 6320 defines such "enjoinable" behavior with a list of conduct that includes "disturbing the peace of the other party." (§ 6320, subd. (a).)

Michael also urges us to break with a line of cases dating back nearly ten years that has interpreted "disturbing the peace" to include non-violent conduct that "destroys the mental or emotional calm" of its target. (*Nadkarni, supra,* 173 Cal.App.4th at p. 1497; see also *Burquet, supra,* 223 Cal.App.4th at pp. 1146-1147.) We decline to do so. Notwithstanding Michael's inapposite hypotheticals and disputed characterization of the evidence, it appears clear from the record before us that the trial court did not base the abuse finding solely upon Michael's Facebook posts, text messages, emails, or anything else as innocuous as Michael visiting his adult daughter at Starbucks.

16

3. ***The Restraining Order Is Overbroad to the Extent It Prohibits Michael from Posting on Facebook***

Although we have found the evidence sufficient to support the court's issuance of a domestic violence restraining order, we conclude the part of the order prohibiting Michael from posting "anything about the case on Facebook" is overbroad and impermissibly infringes upon his constitutionally protected right of free speech.[7]

"[P]rior restraints on speech . . . are the most serious and the least tolerable infringement on First Amendment rights." (*Nebraska Press Ass'n v. Stuart* (1976) 427 U.S. 539, 559 (*Nebraska Press*).) Orders enjoining the right to speak on a particular topic are disfavored and presumptively invalid. (*Id.* at p. 558.) However, courts have recognized a prior restraint may be permissible under certain limited circumstances. (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 143 (*Aguilar*); see *Hobbs v. County of Westchester* (2d Cir. 2005) 397 F.3d 133, 149 (*Hobbs*).)

To establish a valid prior restraint under the federal Constitution, a proponent has the heavy burden to show the countervailing interest is compelling, the prior restraint is necessary and would be effective in promoting this interest, and less extreme measures are unavailable. (See *Hobbs, supra,* 397 F.3d at p. 149; see also *Nebraska Press, supra,* 427 U.S. at pp. 562-568.) A permissible order restraining future speech "must be couched in the narrowest terms that will accomplish the

---

[7] To the extent Michael purports to appeal a similar part of the January 26, 2017 order continuing the restraining order hearing, we conclude his challenge to the speech restriction is moot, having been superseded by the subsequent order that we address above.

17

pin-pointed objective permitted by constitutional mandate and the essential needs of the public order." (*Carroll v. President & Com'rs of Princess Anne* (1968) 393 U.S. 175, 183-184.)

The California Constitution is more protective of free speech rights than the federal Constitution, and California courts require "extraordinary circumstances" before a prior restraint may be imposed. (*Wilson v. Superior Court of Los Angeles County* (1975) 13 Cal.3d 652, 658-661; *In re Marriage of Candiotti* (1995) 34 Cal.App.4th 718, 724 (*Candiotti*).) Nonetheless, in determining the validity of a prior restraint, California courts engage in an analysis of various factors similar to the federal constitutional analysis (*Aguilar, supra,* 21 Cal.4th at pp. 145-146), and injunctive relief restraining speech under the California Constitution may be permissible where the relief is necessary to "protect private rights" and further a "sufficiently strong public policy" (*id.* at p. 167 (conc. opn. of Werdegar, J.)).

Applying these principles, the court in *Candiotti* held a custody order limiting a parent's right to communicate with third parties about matters related to the custody proceeding was an unconstitutional prior restraint. (*Candiotti, supra,* 34 Cal.App.4th at pp. 724-726.) There, the order prohibited a mother from disclosing negative information about her former husband's new wife to anyone except certain specified professionals. (*Id.* at p. 720, fn. 3.) The *Candiotti* court recognized that courts "are given broad authority to supervise and promote the welfare of children" and may constitutionally order parents to refrain from disparaging their former spouse in front of their children. (*Id.* at p. 725.) However, the court observed the challenged order "went further, actually impinging on a parent's right to speak about another adult, outside the presence of the children." (*Ibid.*) The court held the order was overbroad in this respect and constituted an undue prior

18

restraint of speech under the California Constitution, reasoning the order "would prevent [the mother] from talking privately to her family, friends, coworkers, or perfect strangers about her dissatisfaction with her children's living situation." (*Ibid.*) Although the trial court "certainly ha[d] the power to prevent [the mother] from undermining [the father's] parental relationship by alienating the children from [the stepmother]," the *Candiotti* court found the challenged order to be "much more far-reaching, aimed at conduct that might cause others, outside the immediate family, to think ill of [the stepmother]." (*Id.* at p. 726.) The court explained: "Such remarks by [the mother] may be rude or unkind. They may be motivated by hostility. To the extent they are libelous, they may be actionable. But they are too attenuated from conduct directly affecting the children to support a prior restraint on [the mother's] constitutional right to utter them." (*Ibid.*)

The same reasoning applies to the part of the restraining order prohibiting Michael from posting information about the case to Facebook. The record shows Michael's Facebook posts were not specifically directed to the minor children, but in many cases invited comments from Michael's adult friends and extended family, some of whom urged him not to dwell on the divorce, while others suggested he seek legal representation. Moreover, although the trial court plainly had the power to prohibit Michael from disparaging Bertha in the children's presence (see *In re Marriage of Hartmann* (2010) 185 Cal.App.4th 1247, 1251), the order here, like the order in *Candiotti*, was "much more far-reaching," proscribing speech only peripherally related to the case and speech that might, at worst, "cause others, outside the immediate family, to think ill" of Bertha. (*Candiotti, supra,* 34 Cal.App.4th at p. 726.) Indeed, most of Michael's earlier posts were of this variety—they expressed his apparent

19

despair about the divorce and his separation from the children, but did not directly disparage Bertha or openly seek to alienate her from the children.  Posts of this sort are "too attenuated from conduct directly affecting the children to support a prior restraint on [Michael's] constitutional right to utter them."  (*Ibid.*)

"It is certainly in the best interests of any children of divorce that the adults in their lives act in a mature and courteous manner" (*Candiotti, supra,* 34 Cal.App.4th at p. 726); however, where a restraint on the freedom of speech is concerned, the restriction must be necessary and narrowly tailored to promoting those interests.  The part of the restraining order prohibiting Michael from posting about the case on Facebook does not meet this test.  We conclude it is overbroad, constituting an invalid prior restraint, and must be stricken from the domestic violence restraining order.  (*Id.* at pp. 724-726.)

4.      ***The Restraining Order Properly Included the Molinaro's Adult Daughter as a Protected Person***

Michael contends the trial court lacked jurisdiction to include his 18-year-old daughter as a protected person under the domestic violence restraining order.  He is mistaken.  Michael cites sections 6500 and 6501, which merely define "minor" and "adult," and *In re Marriage of Jensen* (2003) 114 Cal.App.4th 587, which concerned custody and visitation orders under a marital settlement agreement.  In contrast to the statute conferring jurisdiction to render a judgment concerning the "custody of *minor* children of the marriage" in a dissolution proceeding (§ 2010, subd. (b), italics added), the DVPA expressly authorizes the court to include as a "protected person" under the order "*[a]ny other person* related by consanguinity or affinity within the second degree."  (§ 6211, subd. (f), italics added.)  Under this authority, the trial court properly included the Molinaro's adult daughter as a protected person under the order.

**5.** ***The Court Properly Ordered Michael to Participate in an Anger Management Program as a Restrained Party under the DVPA***

Finally, Michael argues the trial court abused its discretion by "imposing an anger management counseling order, and in failing to make the findings for counseling required by [section] 3190[, subdivision] (d)(2)." However, section 3190 is not part of the DVPA, and Michael's argument omits any mention whatsoever of section 6343, a provision of the DVPA which states in pertinent part, "[a]fter notice and a hearing, the court may issue an order requiring the restrained party to participate in a batterer's program approved by the probation department as provided in Section 1203.097 of the Penal Code."[8] (§ 6343, subd. (a).) Because substantial evidence supports the court's finding that Michael committed abuse under the DVPA—not by physical violence, but by "disturbing the peace of" his estranged wife (§§ 6320, subd. (a), 6203, subd. (a)(4))—we conclude the trial court did not abuse its discretion in ordering Michael, as "the restrained party" (§ 6343), to undergo counseling addressed to the apparent cause of the type of abuse he committed.[9]

---

[8]    Michael cites two cases, neither of which discusses restrained parties under the DVPA. (See *Camacho v. Camacho* (1985) 173 Cal.App.3d 214, 221-222 [paternity suit; appellate court reversed trial court order that appellant "undergo involuntary psychiatric therapy for an indefinite period of time"]; *Stuard v. Stuard* (2016) 244 Cal.App.4th 768 [affirming order granting grandparents visitation with minor child, apparently discussing section 3190 in unpublished portion of opinion].)

[9]    Michael makes several other similarly perfunctory contentions that do not warrant serious consideration, many of which he directs at the nonappealable order denying his motion for new trial. (Cf. Code Civ. Proc., § 904.1, subd. (a)(4) [only

## DISPOSITION

The part of the restraining order prohibiting Michael Molinaro from posting "anything about the case on Facebook" is reversed, and the trial court is directed to strike the provision from the order.  The restraining order is affirmed in all other respects.  Each party will bear his and her own costs on appeal.

EGERTON, J.

We concur:

LAVIN, Acting P.J.

DHANIDINA, J.

---

"order granting a new trial" is appealable].)  We have considered the arguments and find no grounds to reverse the restraining order.  We also have reviewed the National Coalition for Men's amicus brief and find nothing in it warranting discussion.

Filed 3/28/19

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BERTHA A. MOLINARO, | B282014 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BD643016 |
| v. | |
| MICHAEL M. MOLINARO, | ORDER CERTIFYING FOR PARTIAL PUBLICATION [NO CHANGE IN JUDGMENT] |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed on February 26, 2019, was not certified for publication in the Official Reports. For good cause, it now appears the opinion should be certified for publication in the Official Reports with the exception of parts 1, 2, 4, and 5 of the Discussion.

There is no change in the judgment.

_____

| EGERTON, J. | LAVIN, Acting P. J. | DHANIDINA, J. |